[L.A. No. 29885. In Bank. Jan. 25, 1972.]

TRAVELERS INSURANCE COMPANY et al.,
Plaintiffs and Respondents, v.
TRANSPORT INDEMNITY COMPANY, Defendant and Appellant.

## COUNSEL

Dryden, Harrington & Swartz, Horvitz & Minikes and Ellis J. Horvitz for Defendant and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz and Clyde C. Beery for Plaintiffs and Respondents.

## OPINION

**McCOMB, J.**—Defendant appeals from a judgment determining that plaintiffs are entitled to recover from defendant the amount paid by them under an insurance policy in settlement of a claim for personal injuries, together with interest thereon.

*Facts:* The record herein shows, as follows:

(1) On March 9, 1962, Robert O. Langford (Langford), an employee of Signal Trucking Service, Ltd. (Signal), drove a Signal truck and trailers onto the premises of Shell Oil Company (Shell), where the trailers were to be loaded with drums of Shell chemicals. H. H. Baldwin (Baldwin), an employee of Shell, while assisting in the loading, operated in a negligent manner a forklift owned by Shell; and Langford was injured. The proximate cause of the accident was (a) Shell's negligent maintenance and use of the forklift before the accident, as a result of which the brakes had become unsafe and inoperable, and (b) Baldwin's negligent operation of the forklift.

(2) At the time of the accident, Signal was licensed by the Public Utilities Commission to operate a trucking company. Signal carried liability insurance with defendant, which insurance by operation of law afforded

coverage to anyone using the truck and trailers with Signal's permission. Defendant's basic policy afforded coverage for $10,000, but this coverage had been expanded to $100,000 by virtue of a P.U.C. endorsement to the basic policy.

(3) Shell was insured by plaintiffs under a comprehensive general liability policy in the face amount of $1,000,000, which policy afforded coverage for the accident here in question.

(4) Each policy contained an "excess" other insurance clause declaring the insurance under the policy to be excess insurance over and above the applicable limits of all other insurance. However, defendant's policy also included the P.U.C. endorsement quoted in *Argonaut Ins. Co.* v. *Transport Indem. Co., ante*, p. 496, at p. 503 [99 Cal.Rptr. 617, 492 P.2d 673].[1]

(5) Langford sued Shell and Baldwin, who tendered their defense to plaintiffs. Plaintiffs made demand upon defendant for indemnification, which demand was rejected. Thereafter, plaintiffs settled Langford's claim for $65,000. They then commenced the present action to recoup the settlement plus attorney's fees and costs.

The trial court determined that by reason of the P.U.C. endorsement the "excess" other insurance clause of defendant's policy had been vitiated, thus making such policy primary vis-à-vis plaintiffs' policy; that the "excess" provision of plaintiffs' policy was valid; and that plaintiffs could therefore recover from defendant the full amount they had paid (such amount being within the coverage limits of defendant's policy), plus interest. Judgment was rendered accordingly.

██ Question: *Did the trial court properly determine that the P.U.C. endorsement vitiated the "excess" other insurance clause in defendant's policy?*

---

[1]Said endorsement includes the following language: "Within the limits of liability hereinafter provided [$100,000 per person] it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which this endorsement is attached are to remain in full force and effect as binding between the insured and the Company, and the insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."

*No.* The trial court's ruling is supported by the holding in *Travelers Indem. Co.* v. *Colonial Ins. Co.*, 242 Cal.App.2d 227 [51 Cal.Rptr. 724]. However, we have concluded that it would be unreasonable to give such a meaning and effect to the P.U.C. endorsement, and we have therefore this day disapproved *Travelers* in *Argonaut Ins. Co.* v. *Transport Indem. Co., ante,* p. 496.

In the present case, Shell, the named insured under plaintiffs' policy, and Baldwin, Shell's employee, are clearly covered thereunder. They are likewise covered under defendant's policy as permissive users of Signal's truck.[2] Consequently, since each of the policies covers the accident and has a valid "excess" other insurance clause, both liability and the costs of defense should be prorated according to the amount of coverage afforded.

As hereinabove indicated, plaintiffs' policy provides coverage for $1,000,000, and defendant's policy provides coverage for $100,000. Plaintiffs are therefore chargeable with ten-elevenths of the amount of the settlement and costs, and defendant is chargeable with one-eleventh thereof.[3]

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Tobriner, J., Mosk, J., and Burke, J., concurred.

**SULLIVAN, J.**—I dissent.

For the reasons set forth in my dissenting opinion in *Argonaut Ins. Co.* v. *Transport Indem. Co., ante,* p. 496 [99 Cal.Rptr. 617, 492 P.2d 673], it is my opinion that Transport, which issued a policy containing P.U.C. Endorsement No. 111 to cover Signal's motor vehicles, must bear

---

[2]The fact that the negligent *maintenance* of the forklift would not, under *International Business Machines Corp.* v. *Truck Ins. Exch.*, 2 Cal.3d 1026 [89 Cal.Rptr. 615, 474 P.2d 431], be sufficient to make Shell and Baldwin users of the truck does not change the fact that at the time of the accident Baldwin, acting within the scope of his employment by Shell was participating in the loading of the truck with Signal's permission, as a result of which he and Shell were permissive users of the truck.

[3]As pointed out in *Argonaut* (ante, p. 496, at pp. 507, 508, fn. 3), section 11580.9 of the Insurance Code was enacted in 1970 and prescribes the priorities of policies applicable to a loss arising out of the loading or unloading of a motor vehicle. Under that section, the insurance covering the premises on which the loading or unloading occurs is primary, and there is a conclusive presumption that the policy covering the motor vehicle is not primary, notwithstanding anything to the contrary in any endorsement required by law to be placed on such policy. Section 11580.9, however, was not in effect at the time of the accident herein.

the entire loss on this claim. Therefore, I would affirm the judgment of the trial court.

Wright, C. J., and Peters, J., concurred.